37 So.2d 121

**DeBARDELEBEN COAL CORPORATION v. RICHARDS.**

**BITUMINOUS CASUALTY CORPORATION v. RICHARDS et al.**

**6 Div. 651, 652.**

Supreme Court of Alabama.

June 30, 1948.

Rehearing Denied Oct. 21, 1948.

---

[1] Ante, p. 11.

Bankhead, Skinner & Kilgore, of Jasper, for appellant DeBardeleben Coal Corporation.

Chas. R. Wiggins, of Jasper, and Wm. Henry Beatty, of Birmingham, for Bituminous Casualty Corporation.

Chas. E. Tweedy, Jr., of Jasper, for appellees.

LIVINGSTON, Justice.

Katherine Richards, as administratrix of the estate of Walter Grady Richards, deceased, filed suit in the Circuit Court of

Walker County against Clark and Creel, a partnership composed of Hoyt Clark and Elvin W. Creel; Clark and Creel, individually; the DeBardeleben Coal Corporation, and the Bituminous Casualty Corporation.

Suit was brought under the Workmen's Compensation Law to recover for the death of Walter Grady Richards. It was alleged that on June 11, 1946, Walter Grady Richards was in the employ of Clark and Creel, a partnership, and Clark and Creel, individually, and the DeBardeleben Coal Corporation, as a miner; that on said date, while working for these defendants in their coal mine a rock fell on him causing his death: that the death of Richards arose out of and in the course of his employment; that the defendant, Bituminous Casualty Corporation had issued insurance in accordance with the laws of Alabama, conditioned to pay compensation due to any person injured while working at the opening operated by Clark and Creel, and that said policy of insurance was in force and effect at the time Richards was killed.

The DeBardeleben Coal Corporation and the Bituminous Casualty Corporation interposed separate demurrers to the complaint. Both demurrers were overruled.

The DeBardeleben Coal Corporation answered and denied liability, alleging, in substance, that Richards was not in its employ at the time he was killed; that it had leased its mine to Clark and Creel who were operating the same as independent contractors.

The Bituminous Casualty Corporation in its answer denied that the policy of insurance was in force at the time Richards was killed.

On submission in the lower court judgment was rendered against all of the defendants. The DeBardeleben Coal Corporation and the Bituminous Casualty Corporation, separately, petitioned this Court for writ of certiorari to review the findings of the trial court. On agreement of the parties, the petitions were consolidated and submitted together. Other defendants are not here involved.

This Court in the case of Gerogia Casualty Co. v. Haygood, 210 Ala. 56, 97 So. 87, 91, in considering the question of whether the compensation law repealed the homicide act (section 123, Title 7, Code), giving to the personal representative of a deceased person a right of action for his wrongful death, said:

"The homicide statute is not repealed by the Compensation Act but it is limited in cases like the one now under consideration to be enforced in behalf of the dependents of the deceased employee, and in such cases the right of the administrator to pursue the remedies thereunder is withdrawn. * * *

"The Compensation Act in this respect did not create a new cause of action, but limited the cause of action provided for in section 2486 (now section 123, Title 7, Code) in cases of this character to the dependents, excluding the executor and administrator."

Clear enough, this suit was brought under the provisions of Article 2, Title 26, sections 262 et seq., Code. Subdivision (m) of section 262, supra, provides: "Article 1 of this Chapter shall not apply in cases where this article (article 2) becomes operative in accordance with the provisions thereof, but shall apply in all other cases, and in such cases shall be in extension or modification of the common law."

■ Therefore, section 253, of Article 1, Title 26, Code, has no application in the instant case. It necessarily follows that the personal representative of a deceased person cannot maintain an action under Article 2, Title 26, sections 262 et seq., of the Code of 1940. There is a total lack of statutory authority for such a procedure. The compensation law being in derogation of the common law, as is the homicide act, in the absence of statutory authority the personal representative cannot maintain such a suit.

But appellee earnestly insists that the question of proper party plaintiff was not raised in the court below, and that it cannot be raised for the first time on appeal.

We are not unmindful of the liberal construction given to compensation laws, nor of the liberality allowed as to the procedure in such cases, but we cannot affirm a judgment in the name of one having no authority to institute or maintain such an action in the first place. As to how the proceeds of the judgment in the instant case could or

should be distributed, we need not decide. We think the Court must ex mero motu note the total lack of a proper party plaintiff.

The writer concludes, therefore, that for the reasons stated above, the judgment should be reversed and the cause remanded. However, upon consultation by the whole Court, the other members of the Court are of the opinion that the order of reversal is improper upon the grounds indicated, and state their views in the following brief memorandum.

■ It is clear enough this suit is brought under Article 2, Title 26, Code, seeking compensation for the death of the employee. This Article does not contemplate a suit by the administrator of the estate of deceased. This suit was improperly brought by the administrator of the estate. But here no such question was presented to the trial court. The irregularity of pleading was amendable, and no question being so presented in the court below, of consequence the matter is not here proper to be raised by this Court on appeal.

■ There should be no strict rule of pleading in cases of this character. Here, the widow and dependents are present before the court, and the irregularity of pleading must be considered as waived, and the cause determined upon its merits. This is in accord with our former holding. Humphrey v. Poss, 245 Ala. 11, 15 So.2d 732.

The Court having thus determined, it becomes necessary for the writer to proceed to a further consideration of the cause upon the merits.

■ It is of course well settled by the decisions of this Court that on certiorari in compensation cases, "If on any reasonable view of the evidence it will support the conclusion reached in the trial court, the finding and judgment will not be disturbed." Majors v. Jackson Lumber Co., 244 Ala. 418, 13 So.2d 885, 887; Ex parte Sloss-Sheffield Steel & Iron Co., 207 Ala. 219, 92 So. 458, 460; Ex parte Louisville & N. R., 208 Ala. 216, 94 So. 289; Ex parte Nunnally Co., 209 Ala. 82, 95 So. 343; Ex parte Shaw, 210 Ala. 185, 97 So. 694; Ex parte Thomas, 209 Ala. 276, 96 So. 233; Sloss-Sheffield Steel & Iron Co., v. Alexander, 241 Ala. 476, 3 So.2d 46.

As above stated, the DeBardeleben Coal Corporation asserted by its answer that plaintiff's intestate was not its employee, but was the employee of its independent contractors, Clark and Creel. If Clark and Creel were independent contractors, plaintiff's intestate was not an employee of the DeBardeleben Coal Corporation. On the other hand, if Clark and Creel performed their work "upon the employer's premises, and with the employer's tools or appliances, and under the employer's direction," or is "one who did what is common known as 'piecework'" or "in any (some) way where the system of employment used merely provides a method of fixing their wages" they were employees as defined by section 310, Title 26, Code. If they were such employees, they were not independent contractors. If the circumstances were such as that their employer contemplated the necessity of their having helpers in their work, the employment of those helpers did not make them the helpers or the servants solely of the main employees, Clark and Creel, as contemplated by the Workmen's Compensation Law. It is not necessary that they shall have a claim against defendant for wages to enable them to come within the Workmen's Compensation Law. Their relation to it depends upon the relation of Clark and Creel. If Clark and Creel were employees of the DeBardeleben Coal Corporation, and their employment with defendant contemplated the use of others, such as plaintiff's intestate, plaintiff's intestate was also an employee of the DeBardeleben Coal Corporation within the meaning of that law. Brown & Sons Lumber Co. v. Crossley, 230 Ala. 403, 161 So. 536; Majors v. Jackson Lumber Co., supra.

The liability of the DeBardeleben Coal Corporation was predicated upon the following finding of facts by the trial court:

"DeBardeleben Coal Corporation contends that it stands in the relation of lessor and lessee with Clark & Creel and that Clark & Creel was an independent contractor over which the DeBardeleben Coal Corporation had no control, and that it is not liable for compensation in this case on account of the death of Walter Richards.

"The plaintiff contends that under the Workmen's Compensation Act of Alabama

that the DeBardeleben Coal Corporation also stands in the relation of employer to Walter Richards and that insofar as De-Bardeleben Coal Corporation is concerned, Clark & Creel, the partnership, was not an independent contractor.

"The evidence in this case shows that De-Bardeleben Coal Corporation owned considerable coal lands in Walker County, Alabama, and was operating a large coal mine of its own near Empire, Alabama; that in addition to operating its own mine, it let out or leased six or seven operations to various people such as Clark & Creel; that these operations were carried on and known as 'Wagon mines,' and Lee Hoyt Clark testified that a Mr. Aycock, an employee of DeBardeleben Coal Corporation, was a 'super' (meaning superintendent) of these wagon mines. Clark & Creel signed a written agreement with DeBardeleben Coal Corporation, which agreement was offered in evidence and which contained, among other things, a statement that Clark & Creel could employ only union labor; that they could only deliver coal to DeBardeleben washer or tipple during the time that DeBardeleben was in operation; the evidence also showed that under the lease the DeBardeleben Coal Corporation furnished rails to Clark & Creel, but the evidence was also to the effect that Lee Hoyt Clark went to see Mr. H. F. DeBardeleben, the executive vice president of the company, and got him to furnish them an electric drill and electric cutting machine, and also the electricity to the mine; that Clark & Creel paid for this, but the same was furnished by the DeBardeleben Coal Corporation although it was not mentioned by the lease. The evidence also shows that the coal belonged to DeBardeleben Coal Corporation; that the mine was on its land; that all the coal mined was sold to DeBardeleben Coal Corporation and they could only operate on the day and dates that De-Bardeleben operated; that DeBardeleben had available to Clark & Creel an engineer who came to their mine when called upon and that he would set up centers, which would be the directions in which the headings should be run in the mine so that all available coal would be mined from underground and there would not be a loss or waste in mining, and it was to the interest of DeBardeleben that all coal that could be mined be removed therefrom; the lease also provided that (clause 9) "In event operator shall fail to carry out any term, provision and agreement herein made, company may give him two days' written notice of such failure, and if operator refuses or fails within said two day period to rectify breach to which said notice shall have called his attention, company shall have the right, at its election, to terminate this contract and to retake possession of mining property, and in that event operator agrees to give immediate possession. Said written notice or notices above referred to may be addressed and mailed to operator at Empire, Ala., Rt. No. 1, or otherwise delivered to him in person.' This clause is, in the opinion of the court, somewhat similar to that found in the case of Martin v. Republic Steel Co., 226 Ala. 209, 146 So. 278. While this case is not exactly like the case cited, yet it does give the DeBardeleben the right to terminate the lease of Clark & Creel if there is a violation of any of the terms of the lease, and it appears that clause 19 of the lease reserves the right to terminate the contract or lease in the events enumerated therein, and it impresses the court with the idea that De-Bardeleben would have the power to control the doing and proper execution of the work. All of the wagon mines—six or seven—were on a tonnage basis, including the mine of Clark & Creel; also the work was done on DeBardeleben premises with their coal and with practically all the equipment being furnished by DeBardeleben, could work only union labor, could run coal only on the days DeBardeleben was running the tipple and washer, and Clark & Creel had to have extra men to help get out the coal, which fact was known to DeBardeleben. Clark & Creel, themselves, furnished all of the labor and DeBardeleben did not exercise any supervision over Clark & Creel, the partnership, while Walter Richards was engaged in the performance of his work, but did reserve, in the court's opinion, the right to exercise supervision over them as a partnership and individually, and the right to direct how and in what manner the coal should be mined, disposition of the coal, and the analysis of the samples of coal; and, the payment of same. They mined DeBardeleben coal, sold the coal to

DeBardeleben Coal Corporation at and for the price of $3.35 per ton, and it was delivered to the DeBardeleben Coal Corporation at its washer.

"The court finds, therefore, that under the Workmen's Compensation Law of Alabama, and the Supreme Court construction thereof, that the relation of the DeBardeleben Coal Corporation to Walter Richards at the time of said accident was that of employer and employee, and that the DeBardeleben Coal Corporation should also be responsible for compensation in this cause for the death of Walter Richards."

We have carefully examined the evidence, and find it ample to support the foregoing findings. We cannot say from these facts that the trial court was without evidence upon which to base its conclusion that plaintiff's intestate was under the law an employee of the DeBardeleben Coal Corporation at the time he was killed.

As to the defendant Bituminous Casualty Corporation. It is not disputed that a policy of compensation insurance covering the operations of Clark and Creel was issued. This defendant relied upon an alleged dissolution of the partnership of Clark and Creel, prior to Richards' death, as an avoidance or cancellation of the policy. The testimony touching the question of dissolution was in conflict. In fact, Clark testified positively that the partnership was not dissolved. We are clear to the conclusion that there is ample evidence to support the finding of the trial court that the Bituminous Casualty Corporation was an insurer at the time Richards was killed, and is therefore liable on its policy in this cause.

The cause is due to be and is affirmed.

Affirmed.

GARDNER, C. J., and FOSTER, LAWSON, SIMPSON and STAKELY, JJ., concur.

BROWN, J., concurs in the result.

LIVINGSTON, J., dissents.

The writer of this opinion must respectfully dissent on the point considered first above.