96 So.2d 278

**GOODYEAR TIRE & RUBBER COMPANY OF ALABAMA**

v.

**M. H. DOWNEY.**

**7 Div. 218.**

Supreme Court of Alabama.

March 21, 1957.

Rehearing Denied June 27, 1957.

Hawkins & Rhea, Gadsden, for appellee.

Hood, Inzer, Martin & Suttle, Gadsden, for appellant.

**346**

GOODWYN, Justice.

This proceeding was commenced in the circuit court of Etowah County for the recovery of benefits under the Alabama Workmen's Compensation Law, Code 1940, Tit. 26, § 253 et seq., as amended, by Morton H. Downey, appellee, for disability allegedly resulting from an accident which arose out of and in the course of his employment by Goodyear Tire and Rubber Company of Alabama, defendant below and petitioner here. The trial court awarded compensation to the plaintiff and the case is here on certiorari.

The Company admitted in its answer to the complaint that the relationship of employer and employee existed between it and the plaintiff at the time of the accident and that they were subject to the Workmen's Compensation Law of Alabama then in force; that plaintiff suffered the alleged accident "which arose out of and in the course of his employment, of which accident defendant had notice", and that on the date of said accident "the plaintiff was a married man living with his wife and two dependent children under 18 years of age." As to the accident and the injuries sustained by plaintiff, the answer alleges the following:

"* * * [T]he Plaintiff's right leg was caught between two skids at the plant of the Defendant and as a result thereof the tibia in said right leg was fractured. Defendant further avers that said fracture has healed but admits that Plaintiff is now suffering a permanent partial disability of twenty to twenty-five per cent of the loss of the use of his right foot. Defendant denies that Plaintiff's entire right leg is permanently and totally disabled, and it denies that Plaintiff's entire body is permanently and partially disabled and that his ability to engage in gainful employment and his earning capacity is permanently and substantially decreased, and Defendant again avers that under and by virtue of the nature of the injuries received by Plaintiff in said accident and the applicable provisions of the Workmen's Compensation law of Alabama Plaintiff's only disability is as hereinbefore alleged."

Evidence was taken orally before the trial court from which the court found, as a part of its finding of facts, § 304, Tit. 26, Code 1940, that plaintiff had suffered a "permanent partial disability to the extent of 35%". Judgment was thereupon entered awarding compensation at the rate of $21 per week for 300 weeks, it being ordered that accrued payments be paid in a lump sum less the payments already made by defendant to plaintiff. The defendant thereupon, within thirty days after rendition of the judgment, filed a motion to set aside the judgment and grant a new trial. One ground of the motion was that there was "no determination or finding of fact in said judgment of the difference, if any, between the average weekly earnings of plaintiff at the time of the injuries and the average weekly earnings he is able to earn in his partially disabled condition". Thereafter, more than thirty days after the judgment but while the motion for new trial was still pending, Code 1940, Tit. 13, § 119, the finding of facts was amended by adding thereto the following:

"The Court further finds that although plaintiff has continued on the same job in his employment with defendant that he had prior to the time of said accident, and although plaintiff has to date sustained no substantial decrease in his actual earnings, the plaintiff's physical condition is poorer as hereinbefore set out. The plaintiff's training and experience for most

of his adult life has been employment with the defendant on jobs requiring physical stamina and considerable physical effort. The plaintiff does not and is not able to perform the heavier or more strenuous duties attendant to his job but that, to the contrary, his fellow employees regularly and consistently help plaintiff by performing his heavier and more strenuous duties. The Court finds that plaintiff as a direct and proximate result of said accident suffered and sustained a permanent decrease in his earnings capacity to the extent of 35%; or in his partially disabled condition he is able to earn 65% of his average weekly earnings at the time of said accident."

After making this amendment the motion for new trial was denied and the company brought certiorari.

There seems to be no question that the compensation to which plaintiff is entitled is controlled by schedule (C)6 of § 279, Tit. 26, Code 1940, as amended by Act No. 36, appvd. June 2, 1949, Acts 1949, pp. 47–52, which provided as follows:

"In all other cases of permanent partial disability not above enumerated, the compensation shall be fifty-five percent of the difference between the average weekly earnings of the workman at the time of the injury and the average weekly earnings he is able to earn in his partially disabled condition subject to the same maximum as stated in subsection (A)."

█ It is insisted by the company that since the evidence shows that plaintiff, after his injury, received the same salary which he received prior thereto, that this excludes the idea that his ability to earn has been decreased as a result of his disability. While this might presumptively indicate that his ability to earn has not been impaired, the mere fact that his employer pays him the same earnings in his disabled condition as it did before he was injured is not the sole determining factor.

The statute does not prescribe comparative wages received before and after the injury as the test of the employee's ability to earn. Instead, the test is the difference between the average weekly earnings at the time of the injury and the average weekly earnings the employee "is able to earn in his partially disabled condition". It seems to us that this clearly excludes any notion of limiting the determination of a loss in ability to earn to the one question of wages actually earned after the injury as compared with those earned before. There are other factors which may be considered. In this connection we quote the following from Larson's Workmen's Compensation Law, Vol. 2, § 57.21, pp. 4–6:

"Degree of disability is calculated under most acts by comparing actual earnings before the injury with earning capacity after the injury.

"It is at once apparent that the two items in the comparison are not quite the same. Actual earnings are a relatively concrete quantity; rules for their measurement, for this purpose and for the general purpose of fixing claimant's benefit level, are set out in a later section. Earning capacity, however, is a more theoretical concept. It obviously does not mean actual earnings, since the legislature deliberately chose a different phrase for the post-injury earnings factor. Even under those statutes which compare, for example, 'average monthly wages before the accident' with 'the monthly wages he is able to earn thereafter', the test remains one of capacity. If the legislature had spoken of the wages 'he has earned thereafter', or even the wages 'he has been able to earn thereafter', the comparison of actual wage with actual wage would be indicated. But the concept of wages he 'is able' to earn cannot mean definite actual wages alone, especially in the absence of a fixed period of time within which post-injury wages are to be taken as controlling.

"In essence, the problem is one of tying earnings to a period of time. The relevant period of time for prior earnings can be made relatively short and definite, such as the six months preceding the accident. Once an arbitrary past period is specified as setting the basis for computing an average weekly wage, there can be little argument about what wages were in fact earned. But the relevant period for post-injury earnings melts away into the indefinite future. Obviously we cannot take an arbitrary period of, say, six months after the injury as conclusive, since for a multitude of reasons that period might be entirely non-representative. On the other hand, we cannot wait out the rest of claimant's life to see what his average weekly wage loss ultimately turned out to be, for by then it would be too late for the award to do him any good. An award must be made now and paid now. The only possible solution is to make the best possible estimate of future impairment of earnings, on the strength not only of actual post-injury earnings but of any other available clues.

"It is uniformly held, therefore, without regard to statutory variations in the phrasing of the test, that a finding of disability may stand even when there is evidence of actual post-injury earnings equalling or exceeding those received before the accident. The position may be best summarized by saying that actual post-injury earnings will create a presumption of earning capacity commensurate with them, but the presumption may be rebutted by evidence independently showing incapacity or explaining away the post-injury earnings as an unreliable basis for estimating capacity. Unreliability of post-injury earnings may be due to a number of things; increase in general wage levels since the time of accident; claimant's own greater maturity or training; longer hours worked by claimant after the accident; payment of wages disproportionate to capacity out of sympathy to claimant; and the temporary and unpredictable character of post-injury earnings.

"The ultimate objective of the disability test is, by discounting these variables, to determine the wage that would have been paid in the open labor market under normal employment conditions to claimant as injured, taking wage levels, hours of work, and claimant's age and state of training as of exactly the same period used for calculating actual wages earned before the injury. Only by the elimination of all variables except the injury itself can a reasonably accurate estimate be made of the impairment of earning capacity to be attributed to that injury."

See, also, § 57.22 and §§ 57.31 through 57.35, Larson's Workmen's Compensation Law, Vol. 2, pp. 7–17.

From Horovitz on Workmen's Compensation, page 276, is the following:

"Actual wages earned do not necessarily establish an employee's earning capacity. It is within the province of the trier of facts to find that the amount which he actually earned represented what he 'was able' to earn, but evidence of a greater earning capacity may not be excluded, nor of a lesser, i. e., that part of his so-called wages was a gratuity or gift."

For discussions as to the right to compensation as affected by the fact that an injured employee earns or is offered as much as or more than before the injury, see 149 A.L.R. 413; 118 A.L.R. 731; 17 A.L.R. 205.

See, also, the discussions in Birmingham Post Co. v. McGinnis, 256 Ala. 473, 477, 55 So.2d 507; Alabama By-Products Co. v. Landgraff, 248 Ala. 253, 257–258, 27 So.2d 215; Nashville Bridge Co. v. Honeycutt, 246 Ala. 319, 325, 20 So.2d 591; and

Agricola Furnace Co. v. Smith, 239 Ala. 488, 492, 195 So. 743, 746. We quote the following from the Agricola case:

"Of course the fact the employee resumed his work may be considered for its evidentiary value in determining the percentage of disability, but the mere fact such work is resumed for a given time and at the same wage does not disentitle him to compensation, and these weeks are not due to be deducted.

\* \* \* \* \* \*

"We are persuaded this provision is inapplicable to cases involving permanent partial disability enumerated in the schedule. In cases of partial permanent disability, not so enumerated, perhaps there is reason to consider earnings subsequent to the injury, and this would be especially applicable where compensation is based upon average weekly earnings as compared with average weekly earnings the employee is subsequently able to earn in his partially disabled condition, \* \*."

■ This brings us to the question whether the trial court's finding of a 35% decrease in earning capacity is supported by competent evidence. In resolving this question we are controlled by the established rule of review in workmen's compensation cases, thus stated in Bass v. Cowikee Mills, 259 Ala. 391, 393, 67 So.2d 12, 13:

"On certiorari to review judgments in compensation cases, this court will not look to the weight of the evidence as to any fact found by the trial court, but simply to see if there is any evidence to support facts found by the trial court, and this rule applies when the award or compensation is denied as well as where there has been a judgment favorable to the plaintiff. Our review here on certiorari is confined to questions of law apparent upon the face of the record. \* \* \*

"Where testimony is conflicting, but there is testimony supporting the find-

ing of the trial court in proceedings under the Workmen's Compensation Act, such finding is conclusive. \* \*"

■ Although all factors which possibly might have influenced the trial court in determining the employee's earning capacity were not brought out in the evidence, we are unable to say that no evidence or reasonable inference from evidence bearing on the question was presented. In this situation the finding and judgment will not be disturbed.

■ Another finding which the company insists is not supported by legal evidence is as follows:

"\* \* \* [P]laintiff sustained trauma which resulted in osteoarthritis in and about his lumbar spine and a partial collapse of two intervertebral discs of his lumbar spine, which resulted in his permanent partial disability to the extent of 35%."

While the evidence on this point was meager, we do not think, in the light of the stated rule of review, we would be warranted in saying that it was insufficient to support the finding of the trial court.

We here note that subsec. (A) of § 279, as amended by Act No. 36, supra, provided for a maximum compensation of "fifty-five percent of the average weekly earnings received at the time of injury, subject to a maximum compensation of twenty-one dollars per week." It was admitted, and was found by the court, that plaintiff's average weekly earnings for 52 weeks prior to the accident were $99.40 per week. Subsection (H) of § 279, as amended by Act No. 36, supra, provided as follows:

"Wherever in this section there is a provision for fifty-five percent, such percent shall be increased five percent for a dependent wife and five percent for each dependent child of the employee under the age of eighteen years at the time of the injury to the employee until such percent shall reach

a maximum of sixty-five percent. The increase in the above percent shall be paid only during the dependency of the dependent upon whom such increase is based."

The effect of this, of course, is to raise, in the case of an employee with as many as two dependents, the percentage provided for in subsection (C)6 from fifty-five percent to sixty-five percent of the difference between the average weekly earnings at the time of the injury and the average weekly earnings the employee is able to earn in his partially disabled condition. If plaintiff's ability to earn has been reduced by 35%, as found by the trial court, it is apparent that the plaintiff would be entitled to the maximum weekly payment of $21 authorized under subsection (A) of Section 279, as amended by Act No. 36, supra. The agreed average weekly earnings at the time of the injury being $99.40, the difference between this and the "average weekly earnings he is able to earn in his partially disabled condition" ($99.40 less 35% thereof, or $64.61) is $34.79. Sixty-five percent of $34.79 equals $22.61. Accordingly, plaintiff would be entitled to the maximum of $21 per week if his ability to earn in his partially disabled condition has been decreased by 35% as found by the trial court. We make this observation to show that the award made by the court conformed to the court's findings.

The judgment of the circuit court is affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.

On Application for Rehearing and Motion to Modify Judgment of Affirmance.

PER CURIAM.

The order granting certiorari provided "that the judgment of the Circuit Court of Etowah County will be superseded upon the defendant, Goodyear Tire & Rubber Company of Alabama, a corporation, entering into a supersedeas bond in the sum of $5,000, with good and sufficient surety or sureties, payable to the plaintiff, M. H. Downey, and conditioned to prosecute the appeal by certiorari to effect, or, if it fails therein, to satisfy such judgment and costs as the Supreme Court may render in the premises. Said bond to be approved by the Clerk of the Circuit Court of Etowah County, Alabama."

The prescribed bond was entered into, the condition thereof being as follows:

"The Condition of the above obligation is such that, Whereas, the above bound Goodyear Tire & Rubber Company of Alabama, a corporation, filed a petition for certiorari in the Supreme Court of Alabama under the provisions of Section 297, Title 26, 1940 Code of Alabama, to review, reverse and vacate a judgment or decree against the said Goodyear Tire & Rubber Company of Alabama, a corporation, on a petition by M. H. Downey to recover compensation under the Workman's Compensation Act of Alabama (case number 5094 on the law side of the Circuit Court of Etowah County, Alabama) said judgment or decree being rendered on September 6, 1952, and amended on October 3, 1952, and on August 19, 1953, and the order overruling the motion for new trial filed by said Goodyear Tire & Rubber Company of Alabama, a corporation, which said order is dated August 19, 1953; now, therefore, if said Goodyear Tire & Rubber Company of Alabama, a corporation, shall prosecute to effect the said appeal by certiorari in the Supreme Court of Alabama, or failing therein, shall pay and satisfy such judgment and costs as the Supreme Court shall render in this case, then this obligation to be null and void, otherwise to remain in full force and effect.

"This bond is filed in accordance with the order of the Supreme Court of Alabama, dated September 9, 1953, and as security for costs on said appeal by certiorari."

The judgment of affirmance contains the following provision:

"It is further considered, ordered, and adjudged that the Petitioner, Goodyear Tire & Rubber Company of Alabama, a Corporation, and The Fidelity and Casualty Company of New York, surety on the supersedeas bond filed in this cause, pay the amount of the Judgment of the Circuit Court for all accrued compensation, and ten per centum (10%) damages thereon, and interest, and the costs incident to the proceedings of this Court and of the Circuit Court."

The award of 10% damages was made pursuant to Code 1940, Tit. 7, § 814, as amended, which provides as follows:

"§ 814. Judgment of affirmance on supersedeas.—When a judgment or decree is rendered for money, whether debt or damages, and the same has been superseded on appeal by the execution of bond, with surety, if the appellate court affirms the judgment of the court below, it must also render judgment against all or any of the obligors on the bond, for the amount of the affirmed judgment, ten percent damages thereon, and the costs of the appellate court; and upon the appeal of any judgment or decree rendered for any amount of commissions, fees, or compensation fixed, or determined by the trial court and taxed or allowed as costs, if the appellate court affirms the judgment or decree of the court below, and the payment thereof has been superseded on such appeal, judgment shall be rendered by the appellate court against all or any of the obligors on the bond for the amount affirmed, ten percent damages thereon, and the costs of the appellate court; provided, however, if no supersedeas has been executed on such appeal, the appellate court in the event of affirmance shall increase the amount so allowed as costs by the court below in the judgment or decree appealed from by adding thereto ten percent damages thereon, and the costs of the appellate court."

Petitioner insists it was error to render said judgment for damages for the reason that § 814, supra, applies only to cases which come here by appeal; that this case is here for review by certiorari, not by appeal; hence § 814 has no application.

It does not appear that this court has rendered a written opinion on this question. However, since the case of DeBardeleben Coal Corp. v. Richards, 1948, 251 Ala. 324, 37 So.2d 121, straight judgments of affirmance in workmen's compensation cases have consistently included the 10% damages provided for in § 814, supra. It further appears that this court, in the DeBardeleben case, included, for the first time, a provision for giving a supersedeas bond. Prior to that case such bonds were not provided for and judgments of affirmance in workmen's compensation cases did not include the 10% damages. In each subsequent case involving the review of a judgment awarding compensation a bond has been provided for. The practice has been for a justice of this court (§ 18, Tit. 13, Code 1940) to grant the writ of certiorari as a matter of course, at the same time fixing the amount of the bond, to be approved by the clerk of the circuit court. Such bond has generally been fixed in double the amount of the judgment for accrued compensation payments and the estimated number of payments to accrue between the time of the judgment and a decision here. As a rule such estimate has included payments accruing within twelve months after the judgment. The 10% damages have been assessed against the defendant-petitioner and the surety on all payments which have accrued up to the time of affirmance.

Although no opinion was written on the question in the DeBardeleben case, the court there decided it contrary to movant's insistence and the decision has been followed in each subsequent case. We are not persuaded that that decision should be changed.

In Agricola Furnace Co. v. Smith, 239 Ala. 488, 195 So. 743, 744, the plaintiff obtained a judgment against the defendant in a workman's compensation case. The defendant brought the case here for review by certiorari pursuant to § 7571, Code 1923 (§ 297, Tit. 26, Code 1940). Thereafter the defendant moved to dismiss the cause and vacate the writ. The plaintiff objected on the ground that it would be prejudicial to his interest, as he had entered cross-assignments of error which he desired to have considered. The motion to vacate was denied, the court holding that cross-errors may be assigned when a workman's compensation case is here for review on certiorari the same as if it were here on direct appeal. In so holding the court applied the rule that "the dismissal of an appeal by the appellant does not carry the case so far as it is affected by an assignment of cross-errors". The right to assign cross-errors in cases *on appeal* is given by Code 1940, Tit. 7, § 746, providing as follows:

"§ 746. Cross errors.—In all cases *on appeal* to the supreme court or appellate court, or writ of error, the appellee or defendant in error may assign cross errors; and the court shall dispose of the same as in other cases of assignment of error." [Emphasis supplied.]

The holding in Agricola makes it clear that the authorized "appeal by certiorari" in workmen's compensation cases is subject, at least for some purposes, to procedures prescribed for cases coming here by direct appeal. As there said:

"Though the review here is limited, yet bill of exceptions is allowed for a limited purpose, and the authorities generally recognize a similarity of procedure between a review in such cases and causes on direct appeal. 71 Corpus Juris 1276, et seq; 11 Corpus Juris 193, 194. And in Ex parte Sloss-Sheffield Steel & Iron Co., 207 Ala. 219, 92 So. 458, 460, it was observed that, as the statute provided the aggrieved party may 'by certiorari * * appeal to the Supreme Court,' it appeared 'to hold the scales evenly between certiorari and appeal.' That authority was the first establishing the rule for a bill of exceptions for a limited purpose, which has been consistently followed. Ex parte Woodward Iron Co., 211 Ala. 74, 99 So. 97; Ex parte DeBardeleben Coal Co., 212 Ala. 533, 103 So. 548; Morgan-Hill Paving Co. v. Stewart, 220 Ala. 480, 126 So. 116.

"While we recognize that appeal and certiorari are not identical (Ex parte Woodward Iron Co., 211 Ala. 74, 99 So. 97), yet the statute itself by its language indicates a legislative intent that the method of review be considered in the nature of a limited appeal. Section 6091, Code of 1923 [Code 1940, Tit. 7, § 746, supra], was placed in the Code in its present form after the adoption of the Workmen's Compensation Act, Code 1923, § 7534 et seq. [Code 1940, Tit. 26, § 253 et seq.], and cross-assignments of error are permitted thereunder without appellant's consent. Nelson v. Boe, 226 Ala. 582, 148 So. 311.

"True, the above section specifies only appeal and writ of error, but it gives definite recognition to the principle of cross assignments of error. The similarity existing between a writ of error and certiorari should be kept in mind in this connection. This is noted in the following from the text of 4 C.J.S. Appeal and Error § 9, p. 69: 'While writ of error and certiorari are distinguishable and a writ of certiorari

cannot ordinarily be made to serve the purposes of a writ of error, they are somewhat similar in a number of aspects, certiorari being regarded as in the nature of a writ of error when not ancillary to other process, and as a writ of error within the meaning of some statutes.'

"Clearly, no sound reason exists for permitting cross-errors in writs of error and denying them in an appeal 'by certiorari' as in this class of cases; and we are persuaded that permitting such cross assignment carries out the legislative intent. And this is in harmony with the purpose of the workmen's compensation statute, which looks to a prompt disposition of controversies arising thereunder, and with as little formality as is consistent with its administration. The authorities indicate that in those states where cross-assignments of error are recognized, they are equally applicable, without specific reference, to reviews in compensation cases. Thus the appellate court is enabled to finally adjudicate upon the whole controversy, without multiplication of records, with consequent increase of cost."

Code 1940, Tit. 7, § 793, provides as follows:

"§ 793. Supersedeas bond in general. —When the judgment or decree is for the payment of money only, the appeal does not operate as a supersedeas, or to stay or suspend the execution of such judgment or decree (except in such cases as are otherwise provided), unless bond be given by the appellant, or some other person, in double the amount of the judgment or decree, including costs, payable to the appellee, with sufficient sureties, and with condition to prosecute the appeal to effect, or, if he fails therein, to satisfy such judgment as the appellate court may render in the premises."

It seems to us that if § 746, Tit. 7, supra, applies to workmen's compensation cases there is no sound reason why § 793 should not also apply. The statute authorizing a review (§ 297, Tit. 26, subdiv. A, supra) provides that "the decision of the judge hearing the same shall be conclusive and binding between the parties, subject to the *right of appeal* in this article provided for." [Emphasis supplied.] Subdiv. E of § 297 provides as follows:

"E. Appeal by certiorari. From such decree any aggrieved party may by certiorari within thirty days thereafter *appeal* to the supreme court or the court of appeals of Alabama." [Emphasis supplied.]

■ ■ The judgment against a defendant in a workman's compensation case, certainly to the extent of the accrued payments, is a judgment for the payment of money which, except for the right of "appeal by certiorari", is then due to be paid the plaintiff, and if not paid within ten days execution must be issued thereon "unless otherwise directed by the court or the judge presiding at the trial of the cause or by the written direction of owners of the judgment or his attorney of record." Code 1940, Tit. 7, § 508; see, also, §§ 510 and 511, Tit. 7, providing when execution may issue before prescribed time. Both §§ 508 and 793, Tit. 7, supra, were in existence when the Workmen's Compensation Act was adopted. From a consideration of that Act, particularly § 297, Tit. 26, and its objectives, and in view of the decision in the Agricola case, we think a holding that § 793, Tit. 7, applies to a judgment in a workman's compensation case is reasonable and in accord with the legislative intent. Accordingly, the giving of a supersedeas bond is essential to a stay of the judgment. This means that the granting of the writ in these cases does not, ipso facto, operate as a stay as does the granting of the common-law writ. Webb & Stagg v. McPherson & Co., 142 Ala. 540, 543–544, 38 So. 1009; John v. State, 1 Ala.

**354**

95, 97; Payne v. Martin, 1 Stew. 407, 410; People v. Sturgis, 39 Misc. 448, 80 N.Y.S. 194, 197; 14 C.J.S. Certiorari § 108, p. 245; Ferris, Extraordinary Legal Remedies, Certiorari, § 179, pp. 205, 206. In that respect, the statute has changed the operation of the common-law writ in the review of judgments in workmen's compensation cases. In such cases a stay can be effectuated only by giving the statutory supersedeas bond. If the order granting the writ calls for such bond, the execution of the bond is not a condition to the issuance of the writ. Rather, it is the fixing of the amount of the supersedeas bond. If the petitioner-defendant declines to give the bond, the writ may nevertheless issue; but in that situation there is no stay of the judgment.

We would make it clear that we are not now passing on the question whether this court is without authority, in its discretion, to require, as a condition to the issuance of the writ in compensation cases, the giving by petitioner (appellant) of a bond to indemnify the appellee against loss, in event petitioner declines to give a supersedeas bond. It is to be noted that under the common law it is a proper exercise of discretion to impose, as a condition to the granting of the writ, the giving of a bond for costs and the indemnification of the defendant in certiorari. Webb & Stagg v. McPherson & Co., supra; Payne v. Martin, supra. See Ex parte Pittman Const. Co., 28 Ala.App. 134, 180 So. 725, certiorari denied 236 Ala. 22, 180 So. 728.

We are constrained to hold that the procedure followed since the DeBardeleben case is proper. The application for rehearing and motion for modification of the judgment of affirmance are, therefore, due to be denied.

Application for rehearing and motion to modify denied.

All the Justices concur except STAKELY, J., not sitting.