This is a workmen's compensation case. After an ore tenus
hearing, the trial court determined that the employee had sustained a ten percent permanent partial disability. The employer appeals through able counsel and we affirm.
The dispositive issues on appeal are (1) whether the trial court erred in finding a loss of ability to earn when the evidence reveals that the employee's post-injury earnings equal or exceed his earlier earnings, and (2) whether the trial court erred when it taxed the cost of a medical deposition against the employer.
At the outset we are compelled to repeat the oft-quoted standard of review in workmen's compensation cases; as we stated in Goodyear Tire Rubber Co. v. Corfman, 424 So.2d 1326
(Ala.Civ.App. 1982),
 "[T]he trial court's finding is conclusive if there is any evidence in the report that will support it. Legg v. Americold Compressor Co., 336 So.2d 1121
(Ala.Civ.App. *Page 921 
1976); Purser Steel, Inc. v. McEwen, 47 Ala. App. 263, 253 So.2d 56 (1971). This court can consider neither the weight nor the propriety of the trial court's finding of fact. Our inquiry is limited to a determination of whether there is any evidence to support the trial court's finding. Kroger Co. v. Millsap, 280 Ala. 531, 196 So.2d 380 (1967); Tidwell Industries, Inc. v. Kennedy, 410 So.2d 109
(Ala.Civ.App. 1982); Legg v. Americold Compressor Co., supra."
Id. at 1327. With this standard of review in mind, we look at the evidence as presented in the trial court.
The employee, Franklin D. Campbell, is forty-six years old and a high school graduate. He has been employed at the B.F. Goodrich plant in Tuscaloosa since 1957, and has held his present position, that of an operator in the powerhouse, for about five years. Campbell described the powerhouse operator job as not very demanding physically because the majority of his time is spent monitoring automatic machinery. The "heavy work" involved stems from the job's limited repair and maintenance duties.
Campbell's medical evidence reveals a history of only minor back ailments prior to the October 10, 1981, on-the-job accident. On that date Campbell was standing on a fourteen-foot portable ladder, attempting to open a valve with a wrench, when the ladder moved unexpectedly. Campbell lost his balance and fell into a network of piping. He felt an immediate severe pain — which he described as a snap — in his back and side.
Campbell was treated by the company doctor and was hospitalized for eight days. Three weeks later he was released to return to work; however, he continued to visit the doctor weekly, led "relatively an inactive life" with a good deal of bed rest, and continued his exercise program and the use of heating pads. Campbell testified that after the accident he limited his activities in almost every aspect as he was consciously aware of a constant back pain at all times. Before the accident Campbell had led an active life building the houses his family had lived in, clearing land, baling hay, water skiing, showing horses, and hunting and fishing.
In March of 1982 Campbell again entered the hospital because the pain in his back had increased to the point where it was intolerable. From March 21 to March 26 Campbell was treated with conservative therapy and then released. He was readmitted from April 2 to April 16 to undergo a lumbar laminectomy performed by a neurosurgeon. Campbell did not return to work until August of 1982.
Dr. Moses Jones, the neurosurgeon who performed the back operation, estimated that after surgery Campbell could return to eighty-five or ninety percent of his normal capacity. Campbell admitted that because of the limited physical requirements of his job he has been able to perform well at Goodrich; however, he did testify that he is always conscious of his back problems because of a fear of re-injury, that he is now unable to sleep more than four or five hours nightly, and that he has trouble sitting in one position for very long. He also testified that because of the back problems he has had to curtail a five-year-old valve refinishing business he formerly conducted on the side which does involve a good deal of heavy lifting.
The employer recognizes the applicable law regarding post-injury earnings. In Goodyear Tire Rubber Co. v. Downey,266 Ala. 344, 96 So.2d 278 (1957), the supreme court stated the following:
 "It is insisted by the company that since the evidence shows that plaintiff, after his injury, received the same salary which he received prior thereto, that this excludes the idea that his ability to earn has been decreased as a result of his disability. While this might presumptively indicate that his ability to earn has not been impaired, the mere fact that his employer pays him the same earnings in his disabled condition as it did before he was injured is not the sole determining factor. The statute does not prescribe comparative wages received before and after the injury as the test of the employee's *Page 922 
ability to earn. Instead, the test is the difference between the average weekly earnings at the time of the injury and the average weekly earnings the employee `is able to earn in his partially disabled condition'. It seems to us that this clearly excludes any notion of limiting the determination of a loss in ability to earn to the one question of wages actually earned after the injury as compared with those earned before. There are other factors which may be considered."
Id. at 347, 96 So.2d at 280-81. In Goodyear Tire Rubber Co.v. Corfman, 424 So.2d 1326 (Ala.Civ.App. 1982), this court declared the issue "settled," citing Downey and ten other cases. See id. at 1327-28.
Apparently isolating certain language from the Downey
opinion, B.F. Goodrich insists that because Campbell's post-injury earnings equal or exceed those earned before the accident a presumption arises that Campbell has not suffered a permanent disability and that the burden is upon Campbell to rebut this presumption. We believe Goodrich's emphasis to be misplaced. Although Downey does state that receipt of the same salary "might presumptively indicate that [the employee's] ability to earn has not been impaired," 266 Ala. at 347,96 So.2d at 280, the opinion clearly rejects the use of a presumption and a shift in the burden of proof as Goodrich suggests and adopts an approach which considers many factors.
In the instant case there are "other factors," factors which are similar to those discussed in Corfman. See
424 So.2d at 1328. As stated above, Campbell still is very conscious of his back, has pain, has trouble sleeping at nights or sitting in one place for a long period of time, and he has had to curtail activity which involves lifting heavy objects and other forms of physical exertion. Put another way, the employee's back "hurts." We therefore can find no error in the trial court's finding a ten percent permanent partial disability in spite of the post-injury earnings. The ten percent figure is, of course, further supported by sthe testimony of Dr. Jones and the employee's somewhat limited education.
The second issue the employer raises on appeal is whether the trial court erred in taxing against it the cost of the deposition of Dr. Moses Jones. The deposition was taken by the employee and introduced into evidence by B.F. Goodrich. Goodrich contends that the cost taxation was erroneous because the court taxed costs sua sponte and without any notice to Goodrich.
The specific authority for taxation of costs in workmen's compensation cases is found at § 25-5-89, Ala. Code (1975): "Costs may be awarded by said court in its discretion, and, when so awarded, the same costs shall be allowed, taxed and collected as for like services and proceedings in civil cases. . . ." The general statute covering taxation of deposition costs in civil actions is found at § 12-21-144, Ala. Code (1975):
 "The costs of any deposition introduced, in whole or in part, into evidence at the trial by the party taking it shall be taxed as costs in the case upon the certificate of the person before whom the deposition was taken; the costs of depositions in other cases shall be taxed as costs in the case only if the court so directs."
Under these statutes the taxation of the deposition costs is clearly within the discretion of the trial court. See VulcanOil Co. v. Gorman, 434 So.2d 760 (Ala. 1983).
The employer has cited no authority and we know of none which requires that the opposing party be given notice prior to the taxation of costs or that the issue of costs be specifically injected by the party seeking costs. Under rule 54 (d) of the Alabama Rules of Civil Procedure, taxation of costs without notice is specifically authorized in the case of taxation of costs by the clerk of the court. In light of this provision and the apparent availability of a motion in the trial court to retax costs, we must find that the trial court did not err in taxing costs sua sponte. See Pick-Bay Co. v. Younkin, 287 Ala. 103,109, 248 So.2d 570, 575 (1971). *Page 923 Cf. Kansas City Southern Ry. v. Caruso, 387 F.2d 602 (5th Cir. 1968) (appeals court refused to address cost bill issue not raised below). The judgment below is due to be affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.