This is a workmen's compensation case.
The employee was injured in a mining accident in the course of his employment on October 4, 1983, and sought workmen's compensation benefits.
Following ore tenus proceedings, the learned trial judge found that, as a result of his job-related injuries, the employee had sustained "a degree of permanent partial reduction of his earning capacity at eighty percent." The trial court awarded the employee workmen's compensation based upon this determination.
The employer appeals. We reverse and remand.
At the outset we note that workmen's compensation cases come before this court by way of certiorari. Ala. Code (1975), §25-5-81(d) (1986 Repl.Vol.). On certiorari our review is limited; if there is any legal evidence to support the trial court's findings and conclusions, we must affirm. AmericanAutomobile Insurance Co. v. Hinote, 498 So.2d 848
(Ala.Civ.App. 1986); Lowe v. Walters, 491 So.2d 962 (Ala.Civ.App. 1986).
Our review of the record in this case reveals that the evidence does not support the trial court's conclusion that the employee sustained an eighty percent permanent partial reduction in his earning capacity.
The employee sustained injuries to his back and left leg on October 4, 1983, when a piece of mining machinery pinned him against another piece of machinery. As a result of this injury, the employee's left leg is now approximately two inches shorter than his right leg.
At the time of the accident the employee was employed as a miner operator helper, a job which he testified requires heavy lifting and bending. Following the accident, the employee underwent surgery on his left leg and physical therapy. His doctor released him to return to work on September 17, 1984, almost a year after the accident, with no restrictions or limitations on his work activities. On September 17, 1984, the employee returned to work in his same job of miner operator helper.
It appears that, upon his first returning to work, the employee suffered quite a bit of pain and discomfort with resulting absenteeism. He testified, however, on cross-examination *Page 691 
that, after the first few weeks, most of the problems with his leg resolved themselves and that his leg has gotten better since he returned to work.
Due to work conditions unrelated to his injury, the employee was "bumped" in 1986 from the job of miner operator helper to that of general inside laborer. The employee testified on cross-examination that the "new" job is in some ways harder than that of miner helper, since it requires more lifting and carrying.
At the date of the trial, the employee was still employed in the position of general inside laborer. He agreed on cross-examination that the only problems he is presently having with his ability to work are a problem with balance due to the unlevel terrain in the mine and some loss of strength in his left leg.
The employee testified that, as far as he is aware, the mine management is satisfied with the work he is doing. He expects to have a good possibility of moving up to an easier job with the employer in the future as his seniority increases. He agreed on cross-examination that he knows of no higher rated jobs, other than those requiring particular training, that he could not bid for because of his leg.
Dr. Donald Autry, the employee's orthopedic surgeon, testified by way of deposition that he would give the employee a fifty-five percent disability rating because of potential problems with his leg in the future, such as bowing of the leg and arthritis. The employee himself testified that he thought he had lost about a third of the use of his left leg.
The employee's vocational expert, Dr. Mary Kessler, testified in deposition that, if the employee were unable to continue working as an underground miner for the employer, he would suffer a forty-two percent vocational disability as the result of his leg injury. The employee has only limited education and training.
The parties stipulated that, at the time of the accident, the employee was earning an average of $506.06 per week. On cross-examination the employee testified that he now makes a little over $560 per week. He agreed that "on a weekly basis now, [he is] averaging probably more gross pay than [he was] before [he] got injured."
This undisputed evidence that the employee is now earning more per week than he was at the time of his injury clearly indicates under the circumstances of this case that the trial court erred in concluding that the employee has an eighty percent permanent partial reduction in his earning capacity.City of Montgomery v. Johnson, 403 So.2d 244 (Ala.Civ.App. 1981).
We agree with the employee that the fact that his present weekly earnings exceed his earnings at the time of his injury does not necessarily preclude a finding that he has an eighty percent reduction in his earning capacity. As the Alabama Supreme Court pointed out in Goodyear Tire Rubber Co. v.Downey, 266 Ala. 344, 96 So.2d 278 (1957), such evidence creates a presumption of earning capacity commensurate with earnings, but the presumption may be rebutted by other evidence showing incapacity or explaining why evidence of higher earnings is an unreliable basis for determining capacity.
 "[A]ctual post-injury earnings will create a presumption of earning capacity commensurate with them, but the presumption may be rebutted by evidence independently showing incapacity or explaining away the post-injury earnings as an unreliable basis for estimating capacity. Unreliability of post-injury earnings may be due to a number of things; increase in general wage levels since the time of accident; claimant's own greater maturity or training; longer hours worked by claimant after the accident; payment of wages disproportionate to capacity out of sympathy to claimant; and the temporary and unpredictable character of post-injury earnings."
2 A. Larson, The Law of Workmen's Compensation § 57.21(d) (1987). See Downey, 266 Ala. at 348, 96 So.2d at 281-82;Johnson, 403 So.2d at 247.
In this case, however, we find no evidence to rebut the presumption raised by the evidence of the employee's higher *Page 692 
wages. In fact, the employee admitted that the problems with his leg had gotten better since he returned to work, and though he was "bumped" to an apparently "lower" and more strenuous job, his earnings have increased.
Absent evidence showing that the employee's post-injury earnings are an unreliable basis in this case for estimating the employee's earning capacity, we find unrebutted the presumption raised that the employee's actual post-injury earnings, which are greater than his pre-injury earnings, are commensurate with his earning capacity.
In view of the above, the trial court's conclusion that the employee had suffered an eighty percent permanent partial reduction of his earning capacity is not supported by the evidence.
Other issues would appear to be pretermitted. We would point out to the trial court, however, that it appears that its determination that January 29, 1987, was the date of the employee's on-the-job injuries is also not supported by the evidence.
Also, we note that, in response to the employer's contention that the trial court erred in awarding lump sum attorney fees, we reaffirm this court's well-established position on this subject. See Lowe v. Walters, 491 So.2d 962; Lawler MobileHomes, Inc. v. Hinkle, 459 So.2d 903 (Ala.Civ.App. 1984);Ashland Chemical Co. v. Watkins, 435 So.2d 1301 (Ala.Civ.App. 1983).
This case is reversed and remanded to the trial court for proceedings not inconsistent herewith.
REVERSED AND REMANDED.
BRADLEY, P.J., and INGRAM, J., concur.