A defendant, Lumbermen's Underwriting Alliance ("Lumbermen's Alliance"), petitions this Court for a writ of mandamus directing Judge William H. Robertson, of the Barbour Circuit Court, to grant its motion to dismiss plaintiff David Phillips's claim alleging intentional infliction of emotional distress, otherwise known as the tort of outrage.[1]
 I.
Phillips suffered a work-related injury while employed by M.C. Dixon Lumber Company, Inc. ("Dixon"), on April 26, 1991. Lumbermen's Alliance, as administrator of Dixon's workers' compensation insurance plan, handled Phillips's claim for benefits. Lumbermen's Alliance began paying Phillips weekly payments of $233. However, Phillips and Lumbermen's Alliance could not agree as to the degree of his disability and the benefits due him. Phillips filed a workers' compensation claim against Dixon in the Barbour Circuit Court. The issue before the trial court was the percentage of Phillips's disability. On March 8, 1993, Judge Robertson entered an order granting Phillips permanent total disability benefits.
On May 20, 1993, after its post-judgment motion was denied, Dixon filed a notice of appeal to the Court of Civil Appeals. With its appeal, Dixon also posted a supersedeas bond in accord with Rule 8, Ala.R.App.P., which was approved by the circuit clerk. After the bond was approved, Lumbermen's Alliance discontinued making weekly workers' compensation payments to Phillips; those payments were his only source of income. On January 7, 1994, in M.C. Dixon Lumber Co. v. Phillips,642 So.2d 477 (Ala.Civ.App. 1994), the Court of Civil Appeals affirmed the trial court's judgment holding that Phillips was permanently and totally disabled. Thereafter, Dixon petitioned this Court for a writ of certiorari, which was denied on May 20, 1994. Lumbermen's Alliance made no workers' compensation payments to Phillips during the pendency of *Page 1135 
appellate review of the trial court's judgment.
On January 21, 1994, Phillips sued Dixon and Lumbermen's Alliance, alleging intentional infliction of emotional distress and outrageous behavior, breach of a third-party beneficiary contract, bad faith, fraud, misrepresentation, and "prima facie tort." The basis for each of Phillips's claims was that Dixon and Lumbermen's Alliance were guilty of wrongful conduct by failing to continue making weekly workers' compensation payments to Phillips during the time required for appellate review and had caused him to suffer economic loss and severe mental anguish. The defendants responded by filing a motion to dismiss Phillips's complaint. The trial court granted the defendants' motion as to all counts, except the allegation of intentional infliction of emotional distress, or the tort of outrage. Thereafter, the trial court denied the defendants' request to seek an appeal, by Rule 5, Ala.R.App.P., of the ruling denying a dismissal of Phillips's outrage claim. On June 22, 1994, Dixon and Lumbermen's Alliance jointly petitioned for a writ of mandamus, seeking an order requiring Judge Robertson to dismiss Phillips's outrage claim. However, on July 20, 1994, the trial court granted Dixon's motion for a summary judgment as to that claim. Thus, Lumbermen's Alliance is now the sole petitioner in this Court.
 II.
The writ of mandamus is an extraordinary remedy, and it will be issued only when there is "1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court." Ex parte United Service Stations,Inc., 628 So.2d 501, 503 (Ala. 1993). Additionally, a writ of mandamus will not be issued if the matter complained of can ultimately be resolved by an appeal. Ex parte Spears,621 So.2d 1255 (Ala. 1993).
This Court has previously granted a writ of mandamus ordering a circuit judge to dismiss a plaintiff's complaint where it was clear the petitioner had a legal right to the dismissal, but we also have denied such a writ where the facts available for review were insufficient to determine whether the petitioner had a clear legal right to dismissal of the action. See Exparte City of Birmingham 624 So.2d 1018 (Ala. 1993), and Exparte State Farm General Ins. Co., 549 So.2d 484 (Ala. 1989). Thus, the issue we must address is whether, under the limited facts before us in this review, Lumbermen's Alliance has a clear legal right to have Phillips's outrage claim against it dismissed.
 III.
Lumbermen's Alliance contends that it has a clear legal right to have Phillips's outrage claim against it dismissed, because, it argues, its cessation of weekly payments to Phillips was based on the stay of the trial court's order in Phillips's workers' compensation action; that stay was obtained when Dixon filed a supersedeas bond along with its notice of appeal.
Rule 8(a), A.R.App.P., states, in part:
 "The approval of the supersedeas bond by the clerk of the trial court, unless contested by the opposing party, shall constitute a stay of the judgment when the judgment is for the payment of money only, or the payment of money and some other act and the appellant wishes to supersede the judgment as to the payment of money only."
Citing American Road Service Co. v. Inmon, 394 So.2d 361
(Ala. 1980), Lumbermen's Alliance argues that, under Alabama law, a party cannot be liable for the tort of outrage where it merely acts in response to its legal rights in a permissible way. Thus, Lumbermen's Alliance argues that Phillips's outrage count failed to state a claim upon which relief can be granted and that it has a clear right to have the claim dismissed.
In response, Phillips notes that Dixon conceded at trial, through expert testimony, that he was at least partially disabled because of his work-related accident. Phillips contends that Dixon's appeal contested only the degree of his disability and, thus, that even during the appeal Lumbermen's Alliance was *Page 1136 
obligated to pay him some amount of weekly workers' compensation benefits. Phillips argues that even if Dixon had won on appeal, that victory would have only lowered the amount of the weekly payments due him, and that Lumbermen's Alliance could not have escaped responsibility for some amount of payment during the time the appeal was pending. Phillips contends that "Lumbermen's [Alliance] intentionally discontinued the payments in hopes that [he] would consent to a post-judgment settlement of his claim at terms far less favorable than Judge Robertson's order." Thus, Phillips argues that if this Court were to issue a writ of mandamus ordering the dismissal of his intentional infliction of emotional distress claim against Lumbermen's Alliance, we would be condoning the use of the supersedeas bond provision of Rule 8 as a weapon of coercion against disabled Alabama workers.
 IV.
In Inmon, supra, this Court first recognized the tort of intentional infliction of emotional distress. We stated that in order to recover damages a plaintiff must show that the defendant's conduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Inmon, 394 So.2d at 365. We also held that " '[t]he actor is never liable . . . where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.' " Id., at 368 (quoting Restatement (Second) of Torts § 46, comment g (1948)).
This Court has recognized that a claim alleging the tort of outrage may be brought in a workers' compensation context.Garvin v. Shewbart, 442 So.2d 80 (Ala. 1983).[2] But in Garvin v.Shewbart, 564 So.2d 428 (Ala. 1990) ("Garvin II"), where an outrage claim was brought against a workers' compensation insurer based on an allegation that the insurer had intentionally delayed paying the plaintiff's medical bills, this Court held that the plaintiff had failed to show that the defendant's conduct met the Inmon standard. We concluded that the defendant insurer "was doing 'no more than [insisting] upon [its] legal rights in a permissible way,' for which it cannot be held liable in an action based on outrage." Garvin II, 564 So.2d at 431 (quoting Inmon, 394 So.2d at 368).
However, in Continental Cas. Ins. Co. v. McDonald,567 So.2d 1208 (Ala. 1990), the insurer was found to have intentionally delayed payments for the plaintiff's medical treatments, which were needed to ease his severe continuous pain, and thereby to have caused him to suffer great mental anguish over the possibility of a cessation in his treatments, while pressing him to agree to an unreasonably low settlement. In McDonald, this Court held that the jury was entitled to disbelieve CNA's contention that it had simply insisted on its legal rights, given the "pervasive nature of the delays, the lack of any reasonable explanation for them, and the evidence that CNA was attempting to 'persuade' McDonald to accept a settlement that would greatly reduce the amount that CNA would have to pay for McDonald's medical expenses." 567 So.2d at 1220.
This case does not involve a workers' compensation carrier's delay in paying an injured worker's medical bills, but, rather, the carrier's total cessation of its weekly payment of disability benefits to the worker; that cessation was made in reliance on a stay obtained by the worker's employer. Lumbermen's Alliance argues that Goodyear Tire Rubber Co. ofAlabama v. Downey, 266 Ala. 344, 96 So.2d 278 (1957), supports the proposition that the current supersedeas bond provision, Rule 8, Ala.R.App.P., fully applies to workers' compensation cases. In Downey, an injured worker had broken his leg and suffered a permanent partial disability, yet was able to return to his same position of employment and to earn the same weekly wage as before his injury. 266 Ala. at 346, 96 So.2d at 280. The trial court ruled that Downey had suffered a permanent decrease in his earning *Page 1137 
capacity and ordered Goodyear to pay him disability benefitsin addition to his weekly wage. 266 Ala. at 347,96 So.2d at 280. Goodyear appealed that ruling, and this Court held that the supersedeas bond filed by Goodyear, in accordance with Ala. Code 1940, Title 7, § 793, stayed the requirement that it pay Downey disability benefits in addition to his full salary while the appeal was pending. 266 Ala. at 353, 96 So.2d at 287.
"The purpose of the supersedeas bond is to maintain thestatus quo between the parties pending an appeal. It ensures that the party who has obtained a judgment will not be prejudiced by a stay of execution of the judgment pending the final determination of an appeal." Employers Ins. Co. ofAlabama v. American Liberty Ins. Co., 495 So.2d 1039
(Ala. 1986). Thus, in Downey, the granting of a stay to the employer upon the filing of a supersedeas bond did not alter the status quo; rather, it maintained it. In contrast, in Phillips's workers' compensation case, which serves as the basis for his present claim against Lumbermen's Alliance, the action of Lumbermen's Alliance in stopping payment clearly disrupted the status quo, to the great disadvantage of Phillips.[3] This is an area of workers' compensation law that the Alabama Legislature might wish to address by a statute requiring that an employer make a showing of "irreparable harm," in addition to filing a supersedeas bond, in order to obtain a stay of a judgment in favor of an injured worker.
However, Lumbermen's Alliance may have been acting within its legal rights when, in reliance on the stay, it totally discontinued workers' compensation payments to Phillips, if on appeal of the trial court's judgment in favor of Phillips Dixon raised a meritorious argument in support of its contention that Dixon was not obligated to pay Phillips any workers' compensation benefits. On appeal, Dixon contested the degree of Phillips's disability and contended that "Phillips should beprecluded from receiving workmen's compensation benefits because, [Dixon argued], he failed to pursue employment opportunities located for him by a rehabilitation nurse."Phillips, 642 So.2d at 479 (emphasis added). As previously noted, the Court of Civil Appeals reviewed Dixon's arguments and affirmed the trial court's judgment, and this Court denied Dixon's petition for certiorari review.
On this petition for a writ of mandamus, we do not have for review the record of Phillips's worker's compensation trial, or the briefs the parties submitted on appeal of that judgment. Thus, we are without sufficient facts to determine whether Dixon's argument on appeal that Phillips should have been precluded from receiving any workers' compensation benefits had any merit. Accordingly, we are unable to determine whether Lumbermen's Alliance has a clear legal right to have Phillips's outrage claim against it dismissed. See, e.g., Ex parte StateFarm General Ins. Co., supra.
The petition for a writ of mandamus is denied.
WRIT DENIED.
SHORES, KENNEDY, INGRAM, and COOK, JJ., concur.
[1] The tort of outrage encompasses both intentional and reckless infliction of severe emotional distress. American Road ServiceCo. v. Inmon, 394 So.2d 361 (Ala. 1980).
[2] Overruled on other grounds, Lowman v. Piedmont Exec. ShirtMfg. Co., 547 So.2d 90 (Ala. 1989).
[3] At least several jurisdictions prohibit the granting of a stay during an employer's appeal of a workers' compensation case or condition a stay on more than the posting of a supersedeas bond. See Wise Mechanical Contractors v. Bignell, 626 P.2d 1085
(Alaska 1981) (construing a statutory provision and procedural rule, the court held that in addition to filing a supersedeas bond, the employer must make a showing of "irreparable damage" in order to obtain a stay); Montgomery County v. Lake,68 Md. App. 269, 511 A.2d 541 (1986); McAvoy v. H.B. Sherman Co.,401 Mich. 419, 258 N.W.2d 414 (1977) (a statutory provision states that 70% of the worker's weekly benefit shall not be stayed);State ex rel. Sears, Roebuck Co. v. Industrial Comm'n ofOhio, 2 Ohio App.3d 255, 441 N.E.2d 636 (1982) (construing a statutory provision); State Accident Ins. Fund Corp. v. Maddox,295 Or. 448, 667 P.2d 529 (1983) (construing a statutory provision); McLeod v. Piggly Wiggly Carolina Co., 280 S.C. 466,313 S.E.2d 38 (1984) (construing a statutory provision). The reasoning behind such a prohibition or condition is that the cessation of disability payments during the pendency of an employer's appeal of a judgment in favor of the worker runs afoul of the public policy behind the adoption of workers' compensation acts — to provide necessary day-to-day financial support to an injured worker and the worker's dependents. *Page 1138