This is a workmen's compensation case, before this court on a second appeal.
The employee, Barbara Rice, alleged a psychological injury following an incident at work in which a piece of concrete struck her on the hard hat she was wearing. She sought benefits from her employer, Marley Erectors, Inc., pursuant to Alabama's workmen's compensation statutes.
Following an ore tenus proceeding, the trial court found that the employee "was injured while working on the job — most likely a combination of the falling rock and harassment by co-employees — all of which contributed to her severe psychological disability." It then concluded that the employee had a 15% permanent partial disability due to the accident and awarded compensation.
The employer appealed, contending among other things that the trial court erred in entering an award of compensation without making a finding as to the employee's loss of ability to earn. It is well settled that, when such a finding is absent from the judgment, no grounds for awarding compensation exist.Alabama Power Co. v. Daniel, 545 So.2d 779 (Ala.Civ.App. 1989); B.F. Goodrich Co. v. Martin, 47 Ala. App. 244,253 So.2d 37 (Ala.Civ.App.), cert. denied, 287 Ala. 726, 253 So.2d 45,46 (1971).
By opinion dated February 21, 1990, this court determined that the trial court did not include a finding concerning any loss of the employee's ability to earn. Consequently, we pretermitted any discussion of the other issues raised by the parties and reversed and remanded for a determination of whether the employee suffered a loss of ability to earn.Marley Erectors, Inc. v. Rice, 560 So.2d 1083 (Ala.Civ.App. 1990).
Following remand, the trial court entered a revised order, which adopted the findings of fact in its original order and included a finding that the employee had suffered a 15% loss of earning capacity.
From the trial court's revised order, the employer again appeals. We reverse and remand.
On appeal the employer again raises several issues. However, we find the dispositive issue to be whether the trial court erred in finding the employee had sustained a 15% permanent partial reduction in her earning capacity.
At the outset we note that the standard of appellate review in workmen's compensation cases is a two-step process. Initially, this court will look to see if there is any legal evidence to support the trial court's findings. If such evidence is found, this court will then determine whether any reasonable view of that evidence supports the trial court's judgment. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala. 1991).
Our review of the record in this case, along with the attendant legal principles, reveals that the evidence does not support the trial court's conclusion that the employee sustained a 15% permanent partial reduction in her earning capacity.
The record reveals that the employee sustained a work-related injury when a small piece of concrete fell from a scaffold and struck the hard hat she was wearing. The evidence suggests that the piece of concrete weighed approximately two to three pounds. A few hours after the accident, the employee reported the incident to her employer. At the time, she was more stunned than in pain, but she avers that her neck was painful the next day.
At the time of the accident, the employee was a laborer for the employer, a construction company. She was in her late thirties, had obtained a high school equivalency degree, and had earned a one-year degree from a business college. Prior to her work with the employer, she had been employed as a nurse's aide, a spooler and winder in a textile mill, and a worker in a grocery store. Her primary job responsibilities at the time of the accident included pouring *Page 1381 
concrete, assembling scaffolding, and performing various types of clean-up work. While clearing the walkway on some scaffolding on June 18, 1987, the employee was struck by a piece of concrete that fell from a scaffold several feet above her.
The employee subsequently saw several doctors, including her personal physician, none of whom could find an objective basis for the pain of which she complained. Following the accident, the employee returned to her work with the employer and continued to perform the same duties for approximately one month thereafter, at which time the scaffolding job was completed. Subsequently, the employee worked a short time as a laborer for Construction Engineering.
In January 1988 the employee began work as a laborer in a steam plant for Sullivan, Long Haggerty, where her duties, like those of her co-workers, consisted largely of clean-up work. Testimony from her supervisor, Walter Gates, indicated that the employee worked without special help and without incident until early November 1988, when she told a co-worker that she and her boyfriend had broken up and she entered a hospital for treatment of depression. Suffering from depression and still experiencing unexplainable pain, the employee, upon her attorney's request, saw a psychologist and then a psychiatrist.
The psychiatrist, Dr. Mallory Miree, admitted the employee to a hospital's psychiatric unit. The employee spent six weeks in this unit, during which time she received no income or benefits. She thereafter returned to Sullivan, Long Haggerty, again performing work as a laborer, until January 1989, when she was laid off for reasons not relevant to this appeal.
Dr. Miree, who testified at the trial, also found the employee to be free of physical injury. However, he attributed the employee's severe depression to the accident and to her inability to perform heavy labor and live normally without pain. He diagnosed the employee as having suffered a loss of self-esteem in her new position, which, when combined with the physical pain, substantially contributed to her depression. Contrary to deposed testimony from Dr. L. Lamar Ager, it was Dr. Miree's opinion that the employee's broken romance was not the main source of her depression.
As the record shows, Sullivan, Long Haggerty was satisfied with the performance of the employee while she was in its employ. Her supervisor Gates and a co-worker testified that, before and after the time the employee entered the hospital, she worked satisfactorily and that they never saw her upset.
It is undisputed that the employee's post-injury earnings at Sullivan, Long Haggerty were $9.21 per hour. It is also undisputed that prior to her accident the employee's regular pay rate was $9.21 per hour for 40 hours a week with the employer, Marley Erectors. At the time of the accident, the employee was earning "high" pay from the employer for working over 40 feet high in the air; for this she received $11.21 per hour. However, it is important to note that the trial court determined that any award of benefits must be based on the employee's previous regular weekly pay rate of $9.21 per hour. This determination was based on the trial court's findings that such "high" jobs were scarce and temporary, that the scaffolding job that the employee worked on ended soon after her injury, and that the employee had only performed two such "high" jobs in all of her prior career. Therefore, the record shows that the employee's post-injury earnings equalled her pre-injury earnings.
The rule is that post-injury earnings are but one factor for the court to consider in determining whether there has been a loss of earning capacity. Lankford v. International Paper Co.,454 So.2d 988 (Ala.Civ.App. 1984). However, when an employee's post-injury earnings equal or exceed her earnings at the time of injury, there exists a presumption of earning capacity commensurate with earnings. This presumption may be rebutted by (1) independent evidence of incapacity or (2) evidence tending to indicate that the post-injury earnings are an unreliable basis for estimating earning capacity. GoodyearTire Rubber Co. v. Downey, 266 Ala. 344, *Page 1382 96 So.2d 278 (1957); Florence Enameling Co. v. Jones,361 So.2d 564 (Ala.Civ.App. 1978). Factors that would indicate that post-injury earnings are an unreliable basis for estimating earning capacity include: an increase in general wage levels since the time of the accident; the employee's own greater maturity or training; longer hours worked by the employee after the accident; payment of wages disproportionate to capacity out of sympathy to the employee; and the temporary and unpredictable character of post-injury earnings. Downey,266 Ala. 344, 96 So.2d 278.
In this case, however, we find no evidence that any of the above variables rebut the presumption of commensurate earning capacity that is raised by the evidence of the employee's identical wage rate. We note again that the employee returned to her position with the employer following the accident and worked without incident. She also worked without incident for approximately a year as a laborer for two other firms. Although she testified that she continued to suffer pain during this period, the evidence does not indicate that it interfered with her ability to perform her duties. Such a record of post-injury earnings strengthens the presumption that the employee did not sustain a reduction in her earning capacity. All American Homesof Alabama v. Nichols, 523 So.2d 431 (Ala.Civ.App. 1988).
In support of her claim of lost earning capacity, the employee has cited Ex parte Canterbury Electric Co.,555 So.2d 1066 (Ala. 1989). In Canterbury, our supreme court reasoned that the employee rebutted the presumption of commensurate earning capacity by presenting evidence that following his injury he required assistance from co-workers with his job duties and that the availability of such jobs with commensurate pay was therefore unpredictable. However, in the present case the trial court made no finding that the employee received any special assistance from co-workers following her injury. The uncontroverted testimony of Gates, her supervisor at Sullivan, Long Haggerty, was that the employee had not received such assistance. Moreover, testimony from Gates indicated that whatever pain the employee experienced subsequent to her accident did not apparently interfere with her ability to work. The employee testified that her pain was constant at home and at work.
The employee claims that Gates's testimony that the employee did not always work 40-hour weeks after her injury is proof of her loss of earning capacity. However, the employee offered no evidence showing the frequency of such curtailed work weeks or showing how her post-injury work schedule differed from her pre-injury schedule, nor did she testify at the trial that she was absent from work because of her injury.
We note also that there was no finding by the trial court that the wages earned by the employee at Sullivan, Long 
Haggerty were not indicative of the typical wages the employee could expect to earn after her injury.
Additionally, we note that there is some doubt as to whether there was any evidence presented showing that the employee's disability is permanent. Dr. Miree, the one medical witness who testified that the employee's depression stemmed from her pain and from her inability to perform the work she performed prior to the injury, also testified that he was "optimistic about her prognosis" for recovery.
In view of the above, we find that the trial court's conclusion that the employee suffered a 15% permanent partial reduction in her earning capacity is not supported by the evidence. Discussion of other issues is pretermitted as unnecessary.
This case is reversed and remanded to the trial court with directions to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
ROBERTSON, P.J., and THIGPEN, J., concur. *Page 1383