Delmar E. Knight (employee), age 63, sustained an injury to his back in an accident that occurred while he was performing his job for NTN-Bower Corporation (employer). He subsequently brought an action to recover benefits under the workers' compensation statute of this state.
Following an ore tenus proceeding, the trial court found that the employee had suffered a 10% loss in earning capacity and awarded him accrued permanent partial disability benefits in the amount of $29.55 per week for 139 weeks and future permanent partial disability benefits of $29.55 per week for 94 weeks. The employee appeals, asserting that the trial court erred in finding that his loss of earning capacity was limited to 10%. Additionally, the employee contends that the trial judge should have recused himself from hearing the case.
At the outset we note that appellate review in workers' compensation cases is a two-step process. First, this court will look to see if there is any legal evidence to support the trial court's findings. If such evidence is found, this court will then determine whether any reasonable view of that evidence supports the trial court's judgment. Ex parteEastwood Foods, Inc., 575 So.2d 91 (Ala. 1991).
The record indicates that on March 25, 1988, the employee was loading a metal bar into a tooling machine when his foot slipped, giving his body "a severe jerk." The employee testified that he subsequently began to experience pain in his lower back, which worsened over the next several days. On April 12, 1988, the employee saw Dr. Benjamin Buchanan, an orthopedic surgeon in Tupelo, Mississippi, who performed surgery on the employee's back the following day. Dr. Buchanan testified by deposition that he operated at the L2-L3 region of the employee's spine for a herniated disc, which he attributed to the employee's on-the-job accident. During the operation, Dr. Buchanan also performed a hemilaminectomy at the L3-IA region of the employee's spine. However, he indicated that this procedure was necessitated by a degenerative disc disease unrelated to the employee's accident.
Following surgery, the employee remained off work for approximately eight months, returning to work in late November 1988. Dr. Buchanan testified that the employee reached maximum medical improvement in October 1988. He assigned *Page 264 
the employee a permanent medical impairment rating of 15%.
At the time of his accident, the employee's job involved operating automatic screw machines, a task that frequently required him to lift long metal bars, which, according to the employee, often weighed well over 50 pounds. However, when Dr. Buchanan released the employee to return to work, he restricted the employee from lifting weights of over 25 pounds. Consequently, the employer reassigned the employee to a position as a polisher in the assembly and inspection department. According to the employee, this job requires him to lift weights of no more than 15 pounds. He has been employed in this position for over two and one-half years.
The record further shows that at the time of the accident, the employee's average weekly earnings were $443.32. There was testimony at trial that when he returned to work, he made approximately 10% less in wages than at the time of the accident. His current average weekly wages in the assembly and inspection department, however, are approximately $485.00, which exceeds his earnings at the time of the accident.
In its final order the trial court found that the employee had failed to rebut the presumption that he had suffered no loss in earning capacity, "except to the extent of a possible 10% loss at the time he returned to work." Accordingly, the court determined that the employee was entitled to recover only an amount equal to 66 and 2/3 percent of 10% of his average weekly earnings at the time of his injury. The employee, however, maintains that he presented evidence at trial proving that his current earnings are an unreliable indicator of his earning capacity and that he actually sustained a loss in earning capacity much greater than the 10% found by the trial court.
The rule for purposes of workers' compensation is that when an employee's post-injury earnings equal or exceed his earnings at the time of the injury, there exists a presumption of earning capacity commensurate with earnings. MarleyErectors, Inc. v. Rice, 585 So.2d 1379 (Ala.Civ.App. 1991). The employee may rebut this presumption, however, by presenting evidence showing that such post-injury earnings are an unreliable basis for estimating earning capacity. JimWalter Resources, Inc. v. Hall, 516 So.2d 690
(Ala.Civ.App. 1987).
The employee in the case sub judice insists that he rebutted the presumption regarding his earning capacity. In particular, he points to the deposition testimony of Claude Peacock, a vocational expert who opined that the employee had incurred a "vocational disability" of 67-68% and had sustained a 48% loss of earning capacity due to his injury. The employee testified that, because of the lifting restrictions imposed by Dr. Buchanan, he is no longer eligible for higher paying heavy-duty positions with the employer or on the open market. He claims that he would be earning more if he were still a machine operator and that he has already missed out on an opportunity for another higher paying job because of the restrictions. The employee also testified that he experiences back pain "twenty-four hours a day, seven days a week."
The employee's contentions notwithstanding, we find that the record in the present case contains substantial evidence that the employee's post-injury earnings were a reliable indicator of his earning capacity. John Long, a vocational expert who testified for the employer, placed the employee's vocational disability at 25% and found no loss in his earning capacity, based on the fact that Dr. Buchanan had stated that, in his opinion, the employee should have been doing light-duty work even before his accident. Although Long acknowledged the difficulty a 63-year-old man with a back injury might have in finding employment in the event he lost his current job, he also testified that it would be difficult for a person 63 years old with a degenerative disc disease to find a job, regardless of whether he had had back surgery as a result of a work-related accident. As of the time of the trial, the employee had worked continuously in a regular position in the employer's assembly and inspection *Page 265 
department for two and one-half years, without incident. Although the employee testified that he continued to suffer from pain during this period, testimony from his supervisor indicated that he was performing the full range of his job duties on a sustained basis. The record further shows that the employee often worked overtime in this job and, although overtime was not a condition of his job, never turned down overtime work due to any back pain or problems.
The trial court is the arbiter of the credibility of witnesses, and when supportive evidence is before the court, its factual holdings, based on conflicting testimony, are conclusive. Washington v. Warrior Tractor EquipmentCo., 487 So.2d 1371 (Ala.Civ.App. 1986). Accordingly, the trial court was in a position to weigh the credibility of the employee's contention that he was physically limited by his injury.
The trial court in a workers' compensation case has considerable discretion in determining an employee's loss of earning capacity and is not bound by the testimony of experts, even where such testimony is uncontroverted. DeHart v.Ideal Basic Industries, Inc., 527 So.2d 136 (Ala.Civ.App. 1988). In arriving at its decision, the trial court must consider all evidence, including its own observations, and interpret it according to its own best judgment.International Paper Co. v. Rogers, 500 So.2d 1102
(Ala.Civ.App. 1986).
We have reviewed the record with the attendant principles in mind and find that there is legal evidence to support the trial court's finding of a 10% loss in earning capacity. Because a reasonable view of that evidence supports the trial court's judgment, this court affirms the judgment of the trial court as to this issue.
On appeal the employee also argues that the trial judge should have recused himself from hearing this case because he owns a business, where he maintains an office, and would therefore tend to be biased against employees in workers' compensation actions. The employee, however, did not raise the issue of the trial judge's bias until he had received an adverse judgment, failing therefore to afford the judge an opportunity to recuse himself before he heard the case. The disqualification of a trial judge may be waived if the parties proceed to trial without objection. Ross v. Luton,456 So.2d 249 (Ala. 1984). We conclude that the employee waived his objection by failing to object before the trial judge heard the case and entered an order. We would also add that the employee has failed to present any evidence of actual specific and personal bias by the court toward a particular party in this action.
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.