**MAMA'S ENTERPRISES, LLC, and Mama's Enterprises II, LLC, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civil Action No. CV–12–S–2015–NE.**

United States District Court, N.D. Alabama, Northeastern Division.

June 8, 2012.

Jennifer A. MacDowell, Robert Joseph Fedor, Jr., Robert J. Fedor Esq LLC, Westlake, OH, for Plaintiffs.

Pascale Guerrier, United States Department of Justice, Washington, DC, Michelle Abroms Levin, United States Attorney's Office, Huntsville, AL, for Defendant.

## ORDER & REASONS

LYNWOOD SMITH, District Judge.

Plaintiffs, Mama's Enterprises, LLC, and Mama's Enterprises II, LLC, commenced this action against the United States, seeking to enjoin the Internal Revenue Service from levying monies owed to the plaintiff entities, and to recover compensation for the funds already levied. The action presently is before the court on plaintiffs' motion for a temporary restraining order. The court held a hearing on the motion on June 6, 2012, at which the parties presented oral and documentary evidence. Upon consideration of the parties' pleadings, briefs, evidence, and arguments, the court concludes that the motion is due to be denied.

## I. SUMMARY OF RELEVANT FACTS

The plaintiffs in this action are two limited liability companies named: "Mama's Enterprises, LCC" and "Mama's Enterprises II, LLC." Sherry Roach formed both of the entities under Alabama law, and she is a member of both entities. She formed Mama's Enterprises, LLC in October 2009, and that company originally operated a restaurant in Guntersville, Alabama.[1] The Guntersville restaurant closed, and the company now operates a restaurant within the food court of Huntsville Hospital, pursuant to a contract with the Hospital. That restaurant has been in operation for three years, employs six persons, and produces approximately one-half million dollars in gross revenue each year.

---

1. *See* doc. no. 1 (Complaint).

Sherry formed Mama's Enterprises II, LLC in September 2011, and for the past six months that entity has operated a restaurant in Huntsville, Alabama, that conducts business under the name "Mama's American Table." That restaurant employs fifty-five persons, and produces from $30,000 to $32,000 in gross revenue each month ($360,000 to $384,000 a year).

Sherry Roach has been married to Christopher Roach for eighteen years. Christopher is not a member of either of the plaintiff limited liability companies.

As of January 31, 2012, the Internal Revenue Service ("IRS") has assessed $1,951,644.67 in unpaid taxes, penalties, and interest against Christopher for the tax years 1996, 1999, and 2000.[2] The IRS also has assessed, as of January 31, 2012, $306,161.38 in unpaid taxes, penalties, and interest against Sherry for the tax years 2002 through 2006.[3]

The IRS has issued levies to Huntsville Hospital seeking payment to the IRS of all funds owed to Mama's Enterprises, LLC on the basis that the entity is the alter-ego of Christopher and Sherry Roach.[4] The IRS has collected more than $50,000 through such levies since January 2012, and it continues to collect funds by means of such levies. The IRS also has seized money belonging to Mama's Enterprises II, LLC from a bank account opened by that entity.

Sherry Roach testified that Mama's Enterprises, LLC has borrowed money from her mother-in-law, Dorothy Roach, and from profits of the "Mama's American Table" restaurant, in order to pay the expenses incurred by the Huntsville Hospital food court restaurant. Even so, she contends that she can no longer borrow money from those sources, and she does not have sufficient funds to continue to pay the wages of the employees of the Huntsville Hospital food court restaurant.

The evidence presented during the June 6 hearing established that Christopher and Sherry Roach used the funds of Mama's Enterprises, LLC to pay personal expenses. Christopher and Sherry both wrote numerous checks from an account opened by Mama's Enterprises, LLC at Bancorp South and ending in the four digits 5907.[5] For example, between the dates of January 28, 2010 and January 20, 2011, Sherry Roach wrote checks for veterinary services, for a gift to her nephew, for "cash," and two checks to her church.[6] During that same period, Christopher Roach wrote a check for the couple's daughter's school tuition, a check for his step-son's college tuition, a check to his mother, a check making a payment on a loan Sherry entered into when she was engaged in the business of "flipping" homes in Florida, a check for a payment on a personal vehicle, a check for personal moving expenses, two checks for rental payments on the home Christopher and Sherry rented, and two checks to their church.[7] Additionally, during the same period, Christopher wrote seven checks to "cash" and made one withdrawal, and those checks and the withdrawal aggregated the amount of $7,208.92.[8] Christopher

---

**2.** *See* doc. no. 14–1 (Affidavit of IRS Agent Duncan), at 1.

**3.** *See id.*

**4.** *See* doc. no. 1–1 (Exhibits to Complaint), at 1, 7.

**5.** *See* Affidavit of IRS Agent Duncan, at 2.

**6.** *See* Defendant's Ex. 1 (Bancorp South Records), and the 1234, 1237, and 1312.

**7.** *See id.*, and the checks numbered 1026, 1035, 1078, 1221, and 1368.

**8.** *See id.*, and the checks numbered 1038, 1233, 1240, 1318, 1328, 1336, and 1360.

Roach also has a debit card that draws on a bank account owned by the plaintiff entities, and he uses that card to purchase gas and make other daily purchases, as needed.

Sherry testified that her husband does not have a personal bank account, and until recently she did not have a personal bank account, because they "were afraid that [the IRS] would come and take [the money] because of his [tax debts], what he owed."

Christopher Roach was indicted, along with two co-defendants, in the United States District Court for the Northern District of Illinois on April 13, 2000, on twenty-seven counts of racketeering, unlawful offers and payments to influence operations of employee benefit plans, money laundering, interstate and foreign travel in aid of a racketeering enterprise, tampering with a witness, and extortion and attempted extortion.[9] The indictment alleged that, from on or about March 1994 to on or about August 1997, Christopher Roach and his co-conspirators paid kickbacks and bribes to the trustees of union pension funds in exchange for the trustees directing investment advising business, and the resulting commissions, to the conspirators' securities brokerage firm. The conspirators then transferred the commissions to an account in the Cayman Islands, and from there to accounts in the United Kingdom and the Isle of Man. The conspirators traveled to the Cayman Islands on numerous occasions to conduct business related to their money laundering operation. Roach and his co-conspirators made threats of physical harm and assaulted an individual with a firearm for the purpose of extorting money from individuals, and

they threatened an individual with physical harm if he cooperated in the investigation against them. Additionally, the indictment alleged that Roach and his co-conspirators were in possession of forfeitable property. The United States filed an information charging Roach with tax evasion and making false statements on tax returns on December 18, 2000.[10]

Christopher Roach pled guilty on charges of racketeering, acceptance or solicitation to influence operation of employee benefit plan, tax evasion, and making false statements on tax returns.[11] He was sentenced on May 30, 2002 to thirty-six months in the custody of the United States Bureau of Prisons, followed by three years of supervised release. Additionally, a judgment of forfeiture was entered against Christopher Roach in the amount of $7,433,845.

## II. LEGAL STANDARDS

■ Temporary restraining orders are an extraordinary remedy designed to preserve the *status quo,* and to prevent irreparable harm before the merits of a case can be heard. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County,* 415 U.S. 423, 439, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974).

■ "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray,* 415 U.S. 61, 88, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). Four factors must be considered when deciding whether to grant a motion for a temporary restraining order. The movant must establish: "(1) a substantial likelihood of suc-

---

**9.** *See United States v. William V. Close et al.,* No. 00–CR–0288 (N.D.Ill.).

**10.** *See United States v. Christopher P. Roach,* No. 00–CR–1031 (N.D.Ill.).

**11.** *See United States v. William V. Close,* No. 00–CR–0288 (N.D.Ill.).

cess on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir.2005); *see also Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir.2000) *(en banc)* (same).

Additionally, the Anti–Injunction Act, 26 U.S.C. § 7421, narrowly limits the ability of taxpayers to obtain an injunction against the assessment and collection of taxes. The statute provides that:

> Except as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6225(b), 6246(b), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

26 U.S.C. § 7421(a). Plaintiffs assert that their claim arises under an exception to the Anti–Injunction Act provided by 26 U.S.C. §§ 7426(a) and (b)(1).[12] Section 7426(a) reads, in relevant part, as follows:

> If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

26 U.S.C. § 7426(a). Section 7426(b)(1) provides that:

> If a levy or sale would irreparably injure rights in property which the court determines to be superior to rights of the United States in such property, the court may grant an injunction to prohibit the enforcement of such levy or to prohibit such sale.

26 U.S.C. § 7426(b)(1).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

Plaintiffs allege that the IRS has wrongfully levied funds owed to Mama's Enterprises, LLC by Huntsville Hospital for operation of the food court restaurant because the IRS incorrectly determined that the LLCs were the alter-egos of Sherry and Christopher Roach. Thus, to succeed on the merits, plaintiffs must show that they were not the alter-egos of Sherry and Christopher Roach.

 The IRS may levy the funds of a taxpayer's "alter-ego" because the property owned by a delinquent taxpayer includes property owned by a third party that is an alter-ego of the taxpayer. *See, e.g., G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350–51, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977); *Shades Ridge Holding Co., Inc. v. United States*, 888 F.2d 725, 728 (11th Cir.1989) ("Property of the nominee or alter ego of a taxpayer is subject to the collection of the taxpayer's tax liability."). That rule derives from the principle that "taxation is not so much concerned with the refinements of title as it is with *actual command over the property taxed*—the actual benefit for which the tax is paid." *Corliss v. Bowers*, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916 (1930) (emphasis supplied). "[I]t makes no dif-

---

**12.** *See* doc. no. 6 (Motion for Reconsideration of Plaintiffs' Motion for a Temporary Restraining Order and Permanent Injunction); doc. no. 1 (Complaint) ¶ 4 ("This cause of action is a wrongful levy suit brought pursuant to Internal Revenue Code 'IRC' Section 7426(a)(1). . . . '").

ference that such 'command' may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest, or the maintenance of effective benefit through the interposition of a subservient agency." *Griffiths v. Helvering*, 308 U.S. 355, 357–58, 60 S.Ct. 277, 84 L.Ed. 319 (1939). The *Griffiths* opinion also observed that: "Taxes cannot be escaped 'by anticipatory arrangements and contracts however skillfully devised by which the fruits are attributed to a different tree from that on which they grew.'" *Id.* at 358, 60 S.Ct. 277 (quoting *Lucas v. Earl*, 281 U.S. 111, 115, 50 S.Ct. 241, 74 L.Ed. 731 (1930)) (emphasis supplied).

There is no binding precedent on the question of whether federal or state law governs the determination of whether an entity is the "alter-ego" of a deficient taxpayer. *See Shades Ridge*, 888 F.2d at 728. In some instances, however, courts have found that the resolution of that issue is not necessary because federal and state law is "essentially the same." *United States v. Jon–T Chemicals, Inc.*, 768 F.2d 686, 690 n. 6 (5th Cir.1985); *see also Shades Ridge*, 888 F.2d at 728 (finding that the federal law and Alabama law on the issue "are so similar that the distinction is of little moment").

Even so, when another court within this Circuit was confronted with the issue of whether to apply federal or state alter-ego law when the IRS attempted to collect a tax deficiency from an entity, that court found that

all of the decisions cited from courts within this Circuit have applied the law of the forum state in which the court sits, and more importantly, the vast majority of decisions throughout the United States which address alter ego liability in the federal tax arena have squarely applied the law of the forum state.

*Old West Annuity and Life Insurance Company v. Apollo Group*, No. 5:03–cv–354–Oc–10GRJ, 2008 WL 2993958, at *7 (M.D.Fla. Aug. 1, 2008) (footnotes omitted) (Hodges, J.). The court cited numerous decisions from district courts within the Eleventh Circuit, as well as district and appellate opinions from other circuits, in support of that proposition, *see id.* at *7 nn. 14 & 15 (collecting cases), and concluded that "it appears that the better weight of authority militates in favor of applying [state] law to the alter ego analysis." *Id.* at *7. Similarly, another judge on this same court applied Alabama law when determining whether a successor corporation could be held liable for the debts of its predecessor for federal tax lien purposes, and cited the *Old West Annuity* decision in support of the conclusion that it could be liable. *General Electric Capital Corp. v. Emergystat, Inc.*, Nos. CV–08–B–0171–J, CV–08–B–0699–J, 2009 WL 4465245, at *13 (N.D.Ala. Sept. 30, 2009) (Blackburn, C.J.).

This court finds the reasoning of the *Old West Annuity* decision persuasive for the reasons stated and, thus, will apply Alabama alter-ego law.

 Alabama law provides that a corporation *may be* the alter-ego of a person or another entity, and that the corporate "veil" may be "pierced" when evidence establishes that to be the case. *See Forest Hill Corp. v. Latter & Blum*, 249 Ala. 23, 29 So.2d 298, 302 (1947) ("The notion of separate corporate existence will not be recognized where a corporation is so organized and controlled and its business conducted in such a manner as to make it merely an instrumentality of another...."). Despite the clarity of that well-settled proposition, there are no published decisions by Alabama courts addressing the question of whether the same theory applies to *limited liability companies*. For example, in *Filo America, Inc. v. Olhoss Trading Co., L.L.C.*, 321 F.Supp.2d

1266 (M.D.Ala.2004) (Thompson, J.), an action based on the parties' diversity of citizenship—and, therefore, a case in which Alabama law provided the rules of decision—the Middle District court was confronted with the question of whether the Alabama doctrine of "piercing the corporate veil" applied to limited liability companies. Judge Thompson held that such an entity should be subject to the same standards as corporations under Alabama law. *Id.* at 1268. The court reasoned that an LLC borrows its limited liability characteristic from corporations and, thus, the "veil piercing" exception to the limited liability of corporations should apply to LLCs. *Id.* at 1269. The courts of other jurisdictions have reached the same conclusion. *See id.* (collecting cases). Additionally, learned commentators who have considered the issue have concluded that the corporate "veil piercing" doctrine applies to LLCs. *See id.* (collecting scholarly articles). For those reasons, this court concludes that the limited liability of LLCs may be disregarded under Alabama law when an LLC is the alter-ego of a person or another entity.

■ The alter-ego theory is one of three "typical justification[s] for piercing the corporate veil" under Alabama law. *First Health, Inc. v. Blanton,* 585 So.2d 1331, 1334 (Ala.1991). "[T]he following factors [are] typical justification[s] for piercing the corporate veil: 1) inadequacy of capital; 2) fraudulent purpose in conception or operation of the business; or 3) operation of the corporation as an instrumentality or alter ego." *Id.*

The Alabama Supreme Court also held in *Messick v. Moring,* 514 So.2d 892 (Ala. 1987), that, in order to impose liability on a defendant for the acts of a corporation on the grounds that the corporation was an "instrumentality" or "alter-ego" of the defendant, a plaintiff must show that:

1) The dominant party must have complete control and domination of the subservient corporation's finances, policy and business practices so that[,] at the time of the attacked transaction[,] the subservient corporation had no separate mind, will, or existence of its own;

2) The control must have been misused by the dominant party. Although fraud or the violation of a statutory or other positive legal duty is misuse of control, when it is necessary to prevent injustice or inequitable circumstances, misuse of control will be presumed;

3) The misuse of this control must proximately cause the harm or unjust loss complained of.

*Id.* at 894–95 (alterations supplied).

■ One important factor indicating that a corporation may be the alter-ego of an individual is "where corporate and personal funds are intermingled and corporate funds are used for personal purposes. . . ." *Simmons v. Clark Equipment Credit Corp.,* 554 So.2d 398, 401 (Ala.1989); *see also Ex Parte AmSouth Bank of America,* 669 So.2d 154, 158 (Ala.1995); *Barrett v. Odom, May and DeBuys,* 453 So.2d 729, 732 (Ala.1984); *Lyons v. Lyons,* 340 So.2d 450, 451 (Ala.Civ.App.1976).

■ As discussed previously, the United States presented extensive evidence showing that the plaintiff entities were the alter-egos of Sherry and Christopher Roach, and plaintiffs have not presented any evidence to counter that showing. Christopher and Sherry Roach conducted their personal lives through the funds of the plaintiff entities, and did so for the purpose of avoiding their liabilities to the United States for unpaid taxes. Christopher does not, and, until recent months, Sherry did not possess a personal bank account because of their fear that the IRS would levy any funds deposited to such an account. Instead, Christopher and Sherry

Roach regularly withdrew cash and wrote checks necessary to cover their living expenses from the bank account of Mama's Enterprises, LLC.

Furthermore, Sherry Roach testified that she personally makes, or directs Christopher to make, all of the payments to employees and vendors necessary for the operations of the businesses. Plaintiffs have not presented any evidence that any individual other than Sherry Roach is a member of the plaintiff entities, much less that other individuals exercise control over the entities.

Plaintiffs argue that, while Christopher and Sherry Roach may have treated plaintiffs as their alter-egos in the past, that is no longer the case, because the plaintiff companies no longer conduct business as the alter-egos of the Roaches. Plaintiffs assert that Christopher and Sherry Roach no longer pay their personal expenses out of the Mama's Enterprises, LCC account. Plaintiffs did not, however, present persuasive evidence substantiating that assertion. Moreover, plaintiffs did not present any evidence to show that plaintiffs were not operated as the alter-egos of Christopher and Sherry at the time the IRS made the alter-ego determination or at the time the IRS issued the levies. For those reasons, plaintiffs have failed to show that they are likely to succeed on the merits of their claim that the LLCs are not the alter-egos of Christopher and Sherry Roach.

## B. Irreparable Injury

▬▬▬ A showing of irreparable injury is " 'the *sine qua non* of injunctive relief.' " *Northeastern Florida Chapter of the Association of General Contractors v. City of Jacksonville, Florida*, 896 F.2d 1283, 1285 (11th Cir.1990) (quoting *Frejlach v. Butler*, 573 F.2d 1026, 1027 (8th Cir.1978)). The asserted irreparable injury "must be neither remote nor speculative, but actual and imminent." *City of Jacksonville*, 896 F.2d

at 1285 (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir.1989)); *see also Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (holding that "a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury"). "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *City of Jacksonville*, 896 F.2d at 1285.

In *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), the Court emphatically rejected an "intimation" by the District of Columbia Circuit Court of Appeals "that either loss of earnings or damage to reputation might afford a basis for a finding of irreparable injury and provide a basis for temporary injunctive relief." *Id.* at 89, 94 S.Ct. 937. The Court said:

> Assuming for the purposes of discussion that respondent had made a satisfactory showing of loss of income and had supported the claim that her reputation would be damaged as a result of the challenged agency action, we think the showing falls *far short* of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction in this type of case.

*Id.* at 91–92, 94 S.Ct. 937 (emphasis in original). The Court stressed that:

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Id.* at 90, 94 S.Ct. 937 (quoting *Virginia Petroleum Jobbers Association v. Federal Power Commission,* 259 F.2d 921, 925 (D.C.Cir.1958)). Similarly, the Eleventh Circuit has held that "[c]onjecture about a possibility of difficulties with damage computations is inadequate to support an injunction before trial." *City of Jacksonville,* 896 F.2d at 1286.

▮ Plaintiffs acknowledged at the hearing that the loss of earnings they have suffered, and will continue to suffer, due to the IRS levies is not sufficient to establish irreparable harm. Plaintiffs argue that the community—more specifically, the employees of the plaintiff entities—will suffer irreparable harm if the plaintiffs are forced to close their businesses or declare bankruptcy. The core of plaintiffs' argument is that their employees will be rendered unemployed if their businesses close.

However, plaintiffs bear the burden to show that *they* will suffer irreparable injury. *See City of Jacksonville,* 896 F.2d at 1284 (stating the irreparable injury factor as requiring "a showing that plaintiff will suffer irreparable injury if an injunction does not issue"); *Virginia Petroleum Jobbers Association,* 259 F.2d at 925 (stating the irreparable injury factor as: "Has the petitioner shown that without such relief, it will be irreparably injured?"). Any injury to the restaurant employees or the community if the plaintiff entities are forced to cease operations is not an irreparable injury that would be suffered by the plaintiff entities. Furthermore, any injury that may be suffered by the public, which would include the community and plaintiffs' employees, is considered under the fourth factor—whether the entry of injunctive relief would serve the public interest. The plaintiff entities have not alleged that *they* have suffered or will suffer any injury other than loss of earnings. Thus, plaintiffs fail to satisfy the irreparable injury

requirement for the issuance of a temporary restraining order.

Additionally, in order to meet the requirements of the exception to the Anti–Injunction Act provided by 26 U.S.C. § 7426(b)(1), the plaintiffs must show that the levies would irreparably injure their property interests. For the same reasons previously discussed, plaintiffs fail to show that their property interests would be irreparably injured and, thus, fail to meet the requirements of the section 7426(b)(1) exception to the Anti–Injunction Act.

### C. Harm to the Non–Movant

▮ The United States would be significantly harmed by the issuance of a temporary restraining order because the Internal Revenue Service would be delayed in collecting the tax deficiencies of Christopher and Sherry Roach. Moreover, the issuance of a temporary restraining order would create a danger that Christopher and Sherry Roach may take actions that would significantly hinder the efforts of the United States to ever collect the tax deficiencies. Sherry Roach admitted that she and Christopher had used the plaintiff entities to avoid IRS collection attempts. Furthermore, Christopher has, as shown by his criminal conviction, extensive knowledge of money laundering and offshore banking. If this court were to enter a temporary restraining order, Christopher and Sherry may take actions to hide or shield their assets from the IRS.

### D. Public Interest

▮ Plaintiffs assert that the public interest will be served by a temporary restraining order because the employees of the plaintiff entities will remain employed. Keeping individuals employed, rather than drawing unemployment compensation, is certainly in the public interest. Additionally, ensuring that plaintiffs can continue

to provide their services to the community is in the public interest.

However, the prompt and efficient collection of taxes is also in the public interest. *See United States v. Lee*, 455 U.S. 252, 260, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982) ("Because the broad public interest in maintaining a sound tax system is of such a high order, religious belief in conflict with the payment of taxes affords no basis for resisting the tax.").

## IV. CONCLUSION

In conclusion, plaintiffs fail to establish any of the four factors necessary for the issuance of a temporary restraining order and, thus, plaintiffs' motion for a temporary restraining order is due to be, and hereby is, DENIED.